UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
In re:

|  |  |
|---|---|
|  | Chapter 11 |
| ROBERT A. CARDALI, |  |
|  | Case No. 10-11185 (SHL) |
| Debtor. |  |

------------------------------------------------------------------X
ROBERT A. CARDALI,

|  |  |
|---|---|
| Plaintiff, |  |
| v. | Adv. Pro. No. 10-3531 (SHL) |
| JOANNE GENTILE, |  |
| a/k/a JOANNE CARDALI-GENTILE, |  |
|  |  |
| Defendant. |  |

------------------------------------------------------------------X


**MEMORANDUM DECISION AND ORDER
(1) GRANTING MOTION OF JOANNE GENTILE FOR RELIEF FROM
AUTOMATIC STAY TO PROCEED WITH MANDATORY ARBITRATION AND
(2) STAYING ADVERSARY COMPLAINT OF DEBTOR ROBERT A. CARDALI**


**A P P E A R A N C E S :**

RATTET, PASTERNAK & GORDON-OLIVER, LLP
Attorneys for Debtor/Plaintiff
550 Mamaroneck Avenue
Harrison, New York 10528
        Jonathan S. Pasternak, Esq.
        Julie A. Cvek, Esq.

HALPERIN BATTAGLIA RAICHT, LLP
Attorneys for Movant/Defendant
555 Madison Avenue, 9th Floor
New York, New York 10022
        Robert D. Raicht, Esq.
        Julie D. Dyas, Esq.


**SEAN H. LANE**
**United States Bankruptcy Judge:**

1

Before the Court is the Motion Of Joanne Gentile For Relief From Automatic Stay To Proceed With Mandatory Arbitration dated July 30, 2010 (the "Motion").[1] On August 31, 2010, Debtor Robert A. Cardali (the "Debtor") filed an objection to the Motion (the "Objection") and an adversary complaint (the "Complaint") against Joanne Gentile ("Gentile").[2] For the reasons set forth below, the automatic stay is lifted to permit arbitration to proceed and the Debtor's Complaint is stayed in its entirety pending the results of arbitration.

## BACKGROUND FACTS[3]

The Debtor and Gentile are siblings who worked together as attorneys in a law firm known as Cardali & Cardali, P.C. ("C&C").[4] C&C was the successor entity to a law firm founded by their father.[5] Prior to 2003, the Debtor and Gentile each owned a 50% interest in C&C.[6]

By 2003, the relationship between the Debtor and Gentile had deteriorated.[7] In the spring of 2003, the Debtor commenced a special proceeding in the Supreme Court of New York County seeking judicial dissolution of C&C as well as certain other injunctive relief.[8] Thereafter, the Debtor and Gentile engaged in mediation to resolve the issues between them.[9] That mediation ultimately resulted in a Confidential Referral Fee And Asset Purchase Agreement, dated May 9,

---

[1] The Motion was filed at ECF docket number 36. All ECF docket citations herein refer to case number 10-11185.

[2] The Complaint was filed at ECF docket number 48. The Objection was filed at ECF docket number 49.

[3] The facts are based upon those set forth in the Complaint and the Objection. There are no material factual disputes between the parties.

[4] See Complaint ¶ 14. See also Complaint ¶ 17.

[5] Complaint ¶¶ 13-14.

[6] Complaint ¶ 14.

[7] See Complaint ¶¶ 19-21.

[8] Complaint ¶ 22; Objection ¶ 4.

[9] Complaint ¶ 23.

2003 (the "APA").[10]  Pursuant to the APA, the Debtor agreed to transfer certain monies,

including a referral fee for pending cases, to Gentile in connection with the Debtor's acquisition

of C&C's business.[11]

The APA contains the following arbitration clause:

> Unless otherwise stated herein, <u>any claim or controversy (together, the "Issue") arising out of or relating to this [APA] shall be submitted first to non-binding mediation</u> . . . .  If good faith attempts by the Parties to resolve any such claim or controversy through confidential non-binding mediation as described do not result in resolution or if, after completion of a minimum of one five-hour session with a JAMS mediator, <u>either Party provides written notice to the other that it wishes to submit the Issue immediately to arbitration, then any such Issue shall be submitted to confidential binding arbitration</u> in accordance with the Commercial Rules of the American Arbitration Association; provided, however, that this clause shall not be construed to limit or to preclude either party from bringing any action in any court of competent jurisdiction for injunctive or other provisional relief as necessary or appropriate. . . .  Any award or determination by at least two of the arbitration tribunal shall be final, non-appealable, and conclusive upon the parties, and judgment thereon may be entered by any court of competent jurisdiction.[12]

The APA also contains the following provision regarding closing statements:

> Any disputes with respect to closing statements will be submitted to JAMS for prompt confidential binding arbitration . . . .[13]

In May of 2009, Gentile commenced an arbitration (the "Arbitration") to enforce her

rights under the APA, including payment of the referral fee.[14]  In December of 2009, Gentile

filed a statement in the Arbitration specifying her claims against the Debtor (the "Statement of

---

[10] <u>Id.</u>

[11] Complaint ¶ 3.

[12] APA section 11(g) (emphasis added).  <u>See also</u> APA Exhibit F section 5.  The APA is subject to a confidentiality provision, but the Debtor and Gentile consented to providing the Court with a copy of the APA at the hearing held on this matter on September 24, 2010 (the "Hearing").  <u>See</u> Transcript of Hearing at 40:11-16.

[13] APA section 7(f).

[14] Objection ¶ 5.

Claim").[15]  In response, the Debtor filed a statement of counter-claims, "which alleged, *inter alia*, that the Debtor was fraudulently induced to enter into the [APA], that [Gentile] materially breached the terms of the [APA] and further made material misrepresentations and breached the warranties contained therein, and, further, that [Gentile] misappropriated substantial monies from C&C to the Debtor's direct pecuniary detriment.  The Debtor therefore sought, *inter alia*, rights of offset, recoupment and damages" in the Arbitration.[16]

On March 9, 2010, the Debtor filed a voluntary petition for relief (the "Bankruptcy Case")[17] under chapter 11 of title 11 of the United States Code, 11 U.S.C. section 101, et seq. (the "Bankruptcy Code").[18]  The Debtor initiated this Bankruptcy Case in large part to stay, *inter alia*, the Arbitration.[19]  A creditor meeting in accordance with section 341(a) of the Bankruptcy Code was scheduled for April 9, 2010 (the "341 Meeting").  Gentile appeared at and participated in the 341 Meeting.[20]

On April 21, 2010, upon a motion of the Debtor, an order was entered in this Bankruptcy Case setting June 7, 2010 as a deadline for the filing of proofs of claim.[21]  On May 28, 2010, Gentile filed a proof of claim against the Debtor (the "Proof of Claim").[22]  In support of the Proof of Claim, Gentile attached a one page calculation of damages and the Statement of Claim that Gentile had filed in the Arbitration.

---

[15] Id.

[16] Objection ¶ 6.

[17] On September 9, 2010, this Bankruptcy Case was reassigned from Judge Burton R. Lifland to Judge Sean H. Lane.

[18] Complaint ¶ 1.

[19] Complaint ¶ 12.  See also Objection ¶ 8 ("The Debtor's Bankruptcy was filed in an effort by the Debtor to move this dispute and others toward a final resolution . . . .").

[20] Objection ¶ 29.

[21] See ECF docket numbers 13 and 17.

[22] The Proof of Claim can be found at the claims register for this Bankruptcy Case.

In this Bankruptcy Case, the Debtor and Gentile have obtained orders pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "2004 Orders"), providing for certain discovery in this Bankruptcy Case.[23]  According to the Debtor, the 2004 Orders involve the APA and issues raised in the Arbitration.[24]

On July 30, 2010, Gentile filed the instant Motion, arguing that the arbitration clause in the APA is broad and, therefore, that the bankruptcy automatic stay should be lifted to permit the pending Arbitration to proceed.  On August 31, 2010, the Debtor filed its opposition to the Motion and his Complaint, which consists of claims against Gentile "hav[ing] their genesis in the various acts, conduct, and ensuing litigation between Debtor and [Gentile] which culminated in the execution of the [APA]."[25]  The Debtor argues that the counts in his Complaint are non-arbitrable core proceedings under the Bankruptcy Code and that Gentile has consented to proceeding in the bankruptcy court—rather than arbitration—by, among other things, filing the Proof of Claim.

On September 24, 2010, this Court held a hearing on this matter (the "Hearing").

## DISCUSSION

### A.    The Federal Arbitration Act

The Federal Arbitration Act (the "FAA") establishes a "federal policy favoring arbitration agreements," and mandates the enforcement of contractual arbitration provisions. MBNA Am. Bank, N.A. v. Hill, 436 F.3d 104, 107 (2d Cir. 2006) (citing Moses H. Cone Mem'l

---

[23] The 2004 Orders were filed on June 15, 2010 at ECF docket numbers 32 and 33.

[24] Objection ¶¶ 9-10.

[25] Complaint ¶ 2.  See also Complaint ¶ 8 ("This action arises from [Gentile's] conduct and activities concerning C&C, a law firm previously owned 50% each by [the Debtor] and [Gentile], culminating in litigation in the Supreme Court, New York County, and, ultimately, the APA.").

Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)).[26]  Courts have observed that this federal policy is both "liberal" and "strong."  See, e.g., Brownstone Inv. Group v. Levey, 514 F. Supp. 2d 536, 549 (S.D.N.Y. 2007) ("Through the [FAA], Congress has declared a strong federal policy favoring arbitration as an alternative means of dispute resolution.") (citing Arciniaga v. Gen. Motors Corp., 460 F.3d 231, 234 (2d Cir. 2006); MBNA Am. Bank, 436 F.3d at 107; Denney v. BDO Seidman, 412 F.3d 58, 68-69 (2d Cir. 2005); Bank Julius Baer & Co., Ltd. v. Waxfield Ltd., 424 F.3d 278, 281 (2d Cir. 2005)); Stevenson v. Tyco Int'l (US) Inc., 2006 WL 2827635, 2006 U.S. Dist. LEXIS 71852, at *15 (S.D.N.Y. 2006) ("There is a strong federal policy favoring arbitration.") (citations omitted); Kittay v. Landegger (In re Hagerstown Fiber Ltd. P'ship), 277 B.R. 181, 197 (Bankr. S.D.N.Y. 2002) ("Hagerstown") ("The FAA signifies a congressional declaration of a liberal federal policy favoring arbitration agreements.") (citing Moses H. Cone, 460 U.S. at 24-25).  See also Barnes v. Ont. Drive & Gear Ltd., 2010 WL 311648, 2010 U.S. Dist. LEXIS 4390, at *5 (D. Md. 2010) ("Barnes") ("Thus, when deciding whether to give effect to an arbitration agreement, the Court must bear in mind the 'liberal federal policy favoring arbitration agreements.'") (citing Moses H. Cone, 460 U.S. at 24); Cibro Petroleum Prods. v City of Albany (In re Winimo Realty Corp.), 270 B.R. 108, 117 (S.D.N.Y. 2001) ("Winimo Realty") ("The FAA thus establishes a 'federal policy favoring arbitration' and requiring that federal courts 'rigorously enforce agreements to arbitrate.'"); Pardo v. Akai Elec. Co. Ltd. (In re Singer Co., N.V.), 2001 U.S. Dist. LEXIS 12902, 2001 WL 984678, at *2 (S.D.N.Y. 2001) ("Singer").

---

[26] Section 3 of the FAA provides: "If any suit or proceeding be brought in any of the courts of the United States upon any issues referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."  See Togut v. RBC Dain Correspondent Servs. (In re S.W. Bach & Co.), 425 B.R. 78, 87 n.7 (Bankr. S.D.N.Y. 2010) (quoting 9 U.S.C. §§ 2-3).

The FAA provides that written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." MBNA Am. Bank, 436 F.3d at 107-08 (quoting 9 U.S.C. § 2). It is well-settled that even "statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA." Winimo Realty, 270 B.R. at 117 (citing Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24-25 (1991); Oldroyd v. Elmira Sav. Bank, FSB, 134 F.3d 72, 77 (2d Cir. 1998)). A court has a duty to stay its proceedings if it is satisfied that the issue before it is arbitrable, and "this duty . . . is not diminished when a party bound by an agreement raises a claim founded on statutory rights." MBNA Am. Bank, 436 F.3d at 108 (quoting Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 226, reh'g denied, 483 U.S. 1056 (1987)); Winimo Realty, 270 B.R. at 117; Hagerstown, 277 B.R. at 197 (citations omitted).

Consistent with this policy, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Brownstone, 514 F. Supp. 2d at 549 (citations omitted). Accord O'Neil v. Hilton Head Hosp., 115 F.3d 272, 273-74 (4th Cir. 1997) (quoting Moses H. Cone, 460 U.S. at 24-25); Kirschner v. Grant Thornton LLP (In re Refco, Inc. Sec. Litig.), 2008 WL 2185676, 2008 U.S. Dist. LEXIS 41453, at *22 (S.D.N.Y. 2008); Stevenson, 2006 U.S. Dist. LEXIS 71852, at *15; Moore v. Interacciones Global, 1995 WL 33650, 1995 U.S. Dist. LEXIS 971, at *20 (S.D.N.Y. 1995).

Under this liberal federal policy, courts should grant requests to arbitrate a dispute "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Barnes, 2010 U.S. Dist. LEXIS 4390, at *5-6 (quoting United Steelworkers of Am. v. Warrior & Gulf Navigation, 363 U.S. 574, 582-83

7

(1960)).  The policy favoring arbitration is so strong that "an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement." Hagerstown, 277 B.R. at 197 (citing Moses H. Cone, 460 U.S. at 20; Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 221 (1985)).

The United States Supreme Court has held that district courts are required by the FAA to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel. Stevenson, 2006 U.S. Dist. LEXIS 71852, at *15 (citing Dean Witter Reynolds, 470 U.S. at 217). This is true even in a case where sending arbitrable claims to arbitration would create separate proceedings in different forums.  Id. at *16 (citations omitted); Hagerstown, 277 B.R. at 197 (citing Dean Witter Reynolds, 470 U.S. at 217).  Courts have no discretion to hear the arbitrable claims, even when they are based on the same facts as the non-arbitrable claims.  Stevenson, 2006 U.S. Dist. LEXIS 71852, at *16 (citing Nilsen v. Prudential-Bache Sec., 761 F. Supp. 279, 284 (S.D.N.Y. 1991)).

The FAA as interpreted by the Supreme Court dictates that an arbitration clause should be enforced in a bankruptcy case "unless [doing so] would seriously jeopardize the objectives of the [Bankruptcy] Code."  United States Lines, Inc. v. American S.S. Owners Mut. Protection & Indem. Ass'n (In re United States Lines, Inc.), 197 F.3d 631, 640 (2d Cir. 1999), cert. denied, 529 U.S. 1038 (2000) ("U.S. Lines") (quoting Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 885 F.2d 1149, 1161 (3d Cir. 1989)).

## B.    The Four-Part Test for Motions to Compel Arbitration

Because of the strong federal policy favoring arbitration, the traditional balancing test under In re Sonnax Indus., 907 F.2d 1280, 1286 (2d Cir. 1990), for seeking relief from the automatic stay does not apply.  See Hagerstown, 277 B.R. at 204 ("Sonnax balancing does not

8

apply, and the strong federal policy favoring arbitration trumps the usual considerations of

judicial economy and efficiency which are important factors under Sonnax."). Thus, arbitration

may be necessary even though it will require several litigations and possibly lead to inconsistent

results. Id. ("The recent Second Circuit and district court decisions . . . have clarified and

circumscribed the bankruptcy court's discretion to deny arbitration.").

Rather, a court must apply a four part inquiry when faced with a motion to compel

arbitration: (1) did the parties agree to arbitrate; (2) does the dispute fall within their arbitration

clause; (3) if federal statutory claims are raised, did Congress intend those claims to be

arbitrable; and (4) if the court concludes that some but not all of the claims are arbitrable, should

it stay the non-arbitrable claims pending the conclusion of the arbitration? Hagerstown, 277

B.R. at 198 (citing Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 844 (2d Cir. 1987);

Norcom Elec. Corp. v. CIM USA Inc., 104 F. Supp. 2d 198, 202 (S.D.N.Y. 2000); General

Media, Inc. v. Shooker, 1998 U.S. Dist. LEXIS 10880, 1998 WL 401530, at *9 (S.D.N.Y.

1998)). Accord Oldroyd, 134 F.3d at 75-76; Brownstone, 514 F. Supp. 2d at 549-50; Togut v.

RBC Dain Correspondent Servs. (In re S.W. Bach & Co.), 425 B.R. 78, 87 (Bankr. S.D.N.Y.

2010) ("S.W. Bach"); Bethlehem Steel Corp. v. Moran Towing Corp. (In re Bethlehem Steel

Corp.), 390 B.R. 784, 789 (Bankr. S.D.N.Y. 2008) ("Bethlehem Steel").

Each of these factors is discussed below.

## I.      Parties' Agreement

The initial inquiry is whether the parties entered into an arbitration agreement.

Bethlehem Steel, 390 B.R. at 789; Hagerstown, 277 B.R. at 198. Neither party here disputes that

the APA contains a valid arbitration clause. However, the Debtor argues that a precondition to

arbitration has not been met because the APA's arbitration clause requires the parties to submit

first to mediation.  This argument is unpersuasive for several reasons.  First, before the filing of

this Bankruptcy Case, an arbitration tribunal of the American Arbitration Association had

already ruled that the Debtor "has not demonstrated that the condition precedent contained in

§11(g) of the [APA] was unmet, nor that . . . the parties are required to attend a further mediation

. . . ."[27]  Second, the Debtor's argument ignores that even defenses to arbitration must be settled

*within* arbitration.  Stevenson, 2006 U.S. Dist. LEXIS 71852, at *17 (citing Moses H. Cone, 460

U.S. at 24-25; JLM Indus. v. Stolt-Nielsen, S.A., 387 F.3d 163, 172-74 (2d Cir. 2004)).  In any

event, the Debtor's argument is moot given that the Debtor and Gentile participated in mediation

of their disputes on October 11, 2010.[28]  Accordingly, the Court concludes that the first part of

the test has been satisfied.

### II.    Scope of Arbitration Clause

The second inquiry is whether the arbitration clause is "narrow" or "broad."  See

Bethlehem Steel, 390 B.R. at 789; Hagerstown, 277 B.R. at 198 (citations omitted).  The United

States Court of Appeals for the Second Circuit explained the relevance of the distinction between

broad and narrow arbitration clauses:

> In construing arbitration clauses, courts have at times distinguished
> between "broad" clauses that purport to refer all disputes arising
> out of a contract to arbitration and "narrow" clauses that limit
> arbitration to specific types of disputes.  If a court concludes that a
> clause is a broad one, then it will order arbitration and any
> subsequent construction of the contract and of the parties' rights
> and obligations under it are within the jurisdiction of the arbitrator.

---

[27] Interim Decision And Order Of Arbitrators, Case No. 13-194-Y-016629-09, dated March 3, 2010 (the "Order").
The Order notes that the Debtor "represented to the Panel during the initial Preliminary Hearing that all conditions
precedent to arbitration had been complied with . . . all the while participating voluntarily in this Arbitration."  Id.

[28] By letter dated October 12, 2010, Gentile represented to the Court that the parties undertook mediation of
approximately six hours on October 11, 2010.  See ECF docket number 68.  That mediation was unsuccessful.  Id.

Bethlehem Steel, 390 B.R. at 790 (quoting Collins & Aikman Prods. Co. v. Bldg. Sys., Inc., 58

F.3d 16, 20 (2d Cir. 1995)).  In other words, if the clause is broad, arbitrability will be presumed.

Hagerstown, 277 B.R. at 198 (citations omitted).  "[A]ny doubts concerning the scope of

arbitrable issues should be resolved in favor of arbitration."  S.W. Bach, 425 B.R. at 86-87

(citations omitted).

A clause submitting for arbitration "any and all differences and disputes of whatsoever

nature arising out of this [agreement]" is considered a broad arbitration clause.  See JLM

Industries, Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 167 (2d Cir. 2004); Bethlehem Steel, 390 B.R.

at 790.  Similarly, the Second Circuit has held that a clause referring to arbitration "any

controversy or claim between [the parties] arising out of or relating to" an agreement to be broad,

justifying a presumption of arbitrability.  See S.W. Bach, 425 B.R. at 88 (citing Mehler v. The

Terminix International Co. L.P., 205 F.3d 44, 49 (2d Cir. 2000)).  See also Barnes, 2010 U.S.

Dist. LEXIS 4390, at *6-7 (citing Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395,

398 (1967); American Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 93

(4th Cir. 1996)).

Two decisions shed light on factors relevant to whether the arbitration clause in this APA

should be considered broad.  In Hagerstown, the bankruptcy court observed that arbitration

clauses extending beyond disputes "arising under" a contract to disputes "relating to" or "in

connection with" the contract are paradigmatically broader than the typical narrow arbitration

clause.  See Hagerstown, 277 B.R. at 205.  In Barnes, a recent district court decision out of

Maryland, the underlying agreement provided for arbitration of "any controversy or claim arising

out of or relating to this Agreement, or any breach thereof," with an exception for injunctive or

other provisional relief.  Barnes, 2010 U.S. Dist. LEXIS 4390, at *6.  But as all of the plaintiff's

counts in Barnes sought money damages, the Barnes court concluded that the injunctive

exception did not apply and the arbitration clause was broad.  Id.

Informed by the reasoning in the Barnes and Hagerstown decisions, I find the arbitration

clause here to be broad.  Counts 1 through 6 of the Complaint seek the repayment of money paid

by the Debtor pursuant to the APA under a variety of legal theories.  While count 7 is titled as

one for "Declaratory Judgment," it too seeks an award of damages.  Count 8 seeks to hold the

APA invalid but fails to identify any significance of such relief beyond the monetary damages

sought in the other counts of the Complaint.  Indeed, there appears to be no dispute among the

parties that their disagreement is of a monetary nature.  As money damages so predominate the

Complaint, the injunctive carve-out in the APA is of little practical relevance, and I conclude that

the arbitration clause here is broad.

### III.    Congressional Intent – Core v. Non-Core

Having addressed the first two prongs of the test, I proceed to assess the more difficult

third question: whether any federal statutory claims raised were intended by Congress to be

arbitrable.  This third question is necessarily more complicated because it requires consideration

of Congress's policy in favor of arbitration as weighed against the important federal interests

embodied in the Bankruptcy Code.

In weighing this clash, the courts have focused first on whether the matter in question is a

core or non-core bankruptcy proceeding.  See Hagerstown, 277 B.R. at 198.  "Core" proceedings

are matters "arising under" the Bankruptcy Code or "arising in" bankruptcy cases.  Winimo

Realty, 270 B.R. at 119 (citations omitted).  "Non-core" proceedings are merely "related to"

bankruptcy cases.  Id. (citations omitted).  See also S.W. Bach, 425 B.R. at 89 (citations

omitted).  Core bankruptcy matters implicate "more pressing bankruptcy concerns" than do non-

12

core matters.  See MBNA Am. Bank, 436 F.3d at 108.  As the Second Circuit has recognized, a non-core matter is "unlikely to present a conflict sufficient to override by implication the presumption in favor of arbitration."  Hagerstown, 277 B.R. at 201 (citing U.S. Lines, 197 F.3d at 640).

Section 157 of 28 U.S.C. sets out a non-exhaustive list of core bankruptcy proceedings, subject to the constitutional limits established by Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982) ("Marathon").  See Bankruptcy Servs. v. Ernst & Young (In re CBI Holding Co.), 529 F.3d 432, 460 (2d Cir. 2008); Cent. Vt. PSC v. Herbert, 341 F.3d 186, 190 (2d Cir. 2003); Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp.), 4 F.3d 1095, 1102 (2d Cir. 1993), cert. dismissed, 511 U.S. 1026 (1994); S.W. Bach, 425 B.R. at 89.  The principal holding of Marathon is that Congress has minimal authority to control the manner in which a right created by state law may be adjudicated as that right is independent of and antecedent to the reorganization petition that conferred jurisdiction upon the bankruptcy court.  U.S. Lines, 197 F.3d at 637 (citing Marathon, 458 U.S. at 50; Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 584 (1985)).  Therefore, under Marathon, whether a contract proceeding is core depends on (1) whether the contract is antecedent to the reorganization petition; and (2) the degree to which the proceeding is independent of the reorganization.  U.S. Lines, 197 F.3d at 637.  The latter inquiry hinges on "the nature of the proceeding."  Id. (citing S.G. Phillips Constructors, Inc. v. City of Burlington (In re S.G. Phillips Constructors, Inc.), 45 F.3d 702, 704 (2d Cir. 1995)).

Nevertheless, a determination that a proceeding is core will not automatically give the bankruptcy court discretion to stay arbitration.  Crysen/Montenay Energy Co. v. Shell Oil Co. (In re Crysen/Montenay Energy Co.), 226 F.3d 160, 166 (2d Cir. 2000); U.S. Lines, 277 B.R. at 200.

Even if the proceeding is core, a bankruptcy court must still carefully determine whether any underlying purpose of the Bankruptcy Code would be adversely affected by enforcing the arbitration clause, and the arbitration clause should be enforced unless doing so would seriously jeopardize the objectives of the Code.  Hagerstown, 277 B.R. at 200-01 (citing U.S. Lines, 197 F.3d at 640; Hays & Co., 885 F.2d at 1161).  See also Longacre Master Fund, Ltd. v. Telecheck Servs. (In re Casual Male Corp.), 317 B.R. 472, 479 (Bankr. S.D.N.Y. 2004) ("[A] determination of whether or not a matter is core is not determinative of decisions as to discretionary remand or discretionary abstention.  What is more important is that state law issues predominate.").  In Winimo Realty, the district court observed that "not all bankruptcy proceedings are premised on provisions of the Code that 'inherently conflict' with the Federal Arbitration Act; nor would arbitration of such proceedings necessarily jeopardize the objectives of the Bankruptcy Code." Winimo Realty, 270 B.R. at 118 (citations omitted).

Determining whether a sufficiently severe conflict exists between the Bankruptcy Code and the FAA to deny the request to arbitrate "requires a particularized inquiry into the nature of the claim and the facts of the specific bankruptcy."  Bethlehem Steel, 390 B.R. at 794 (quoting MBNA Am. Bank, 436 F.3d at 108).  A court must determine "whether the underlying dispute concerns rights created under the Bankruptcy Code or non-Bankruptcy Code issues derivative of the debtor's pre-petition business activities.  In the former situation, the bankruptcy court has discretion to refuse arbitration, but in the latter it does not."  S.W. Bach, 425 B.R. at 89 (quoting Hagerstown, 277 B.R. at 202).

The bankruptcy court in Hagerstown noted that matters appearing on their face to be core may actually be core only as a procedural matter such that arbitration would still be appropriate:

> If the matter is core, the bankruptcy court must still examine the nature and reason for its "coreness."  Many proceedings are

14

> procedurally core; they are garden variety pre-petition contract
> disputes dubbed core because of how the dispute arises or gets
> resolved.  Objections to proofs of claim and counterclaims asserted
> by the estate, the types of core proceedings involved in <u>Singer</u> and
> <u>Winimo</u>, exemplify this type of matter.  The arbitration of a
> procedurally core dispute rarely conflicts with any policy of the
> Bankruptcy Code unless the resolution of the dispute
> fundamentally and directly affects a core bankruptcy function.

<u>Hagerstown</u>, 277 B.R. at 203.  <u>See also</u> <u>Winimo Realty</u>, 270 B.R. at 118 ("even a determination

that a proceeding is core will not automatically give the bankruptcy court discretion to stay

arbitration") (citations omitted).

Evaluating these competing considerations requires a review of the individual counts of a

complaint.  The party opposing arbitration has the burden of proving that Congress evinced an

intent to limit or prohibit waiver of a judicial forum for the particular claim at issue.  <u>Winimo

Realty</u>, 270 B.R. at 118 (citations omitted); <u>S.W. Bach</u>, 425 B.R. at 89 (citations omitted).

As set forth below, I conclude that nothing in the Complaint implicates a Congressional

intent that would justify proceeding in this forum rather than through arbitration.

### (a)    Counts 1-4: Fraudulent Conveyance

Counts 1 through 4 of the Complaint raise fraudulent conveyance claims pursuant to

sections 544, 548, and 550 of the Bankruptcy Code and applicable state law.[29]  The United States

Supreme Court has held that fraudulent conveyance claims ostensibly brought under the

Bankruptcy Code "are quintessentially suits at common law" that "resemble state-law contract

claims brought by a bankrupt corporation to augment the bankruptcy estate."  <u>Winimo Realty</u>,

270 B.R. at 124 (quoting <u>Granfinanciera, S.A. v. Nordberg</u>, 492 U.S. 33, 55 (1989)).  Thus, the

arbitration of such fraudulent conveyance claims would not seriously threaten the objectives of

the Bankruptcy Code.  <u>See Hagerstown</u>, 277 B.R. at 207 (citing <u>Winimo Realty</u>, 270 B.R. at 124-

---

[29] Complaint ¶¶ 43-54.

25).  See also Enron Power Mktg. v. City of Santa Clara (In re Enron Power Mktg.), 2003 WL

68036, 2003 U.S. Dist. LEXIS 189, at *31 (S.D.N.Y. 2003) ("Because I find that plaintiff's

causes of action are essentially contract claims dressed up as bankruptcy claims, they must be

considered 'non-core' for the purpose of the present motion to withdraw the reference from

Bankruptcy Court.").

In Hagerstown, the bankruptcy court confronted an instance similar to the one before this

Court: whether to stay in favor of arbitration certain fraudulent conveyance claims brought under

the Bankruptcy Code.  Id. at 207-08.  The Hagerstown court determined that the fraudulent

conveyance claims were directly connected to the underlying contract disputes.  Id. at 208.  The

court also noted that the pending arbitration and the fraudulent conveyance claims in Hagerstown

shared common questions of fact, predicting that the arbitration might contribute to the

resolution of the fraudulent conveyance claims.  Id.  Accordingly, the Hagerstown court stayed

the fraudulent conveyance claims so that the arbitration could proceed in accordance with

Congressional intent.  See id.

Here, too, the Arbitration shares common questions of fact with the fraudulent

conveyance claims raised by the Complaint.  Counts 1 through 3 explicitly reference the APA

and count 4 is clearly related to the APA.  Moreover, not only do these fraudulent conveyance

claims arise out of and relate to the APA, but they also closely resemble, and sometimes overtly

cite, underlying state law.  Because the Debtor's claims are directly derivative of the Debtor's

rights under the APA, I conclude that nothing in counts 1 through 4 weighs against proceeding

with the Arbitration.  See Bethlehem Steel, 390 B.R. at 791-92 ("Claims that are derivative of a

debtor's rights may be subject to arbitration.").  Compare S.W. Bach, 425 B.R. at 91 ("[T]he

fraudulent conveyance claim in this case is not directly connected to the performance of any

contract between the Debtor and AGI—indeed, there was no contract between [the parties].  The fraudulent conveyance claim stands on its own; the outcome does not depend the outcome of otherwise arbitrable claims.").

### (b)    Count 5: Disallowance of Claim

Count 5 of the Complaint seeks "expungement, disallowance and/or setoff of the Proof of Claim . . . without prejudice to the right to file a separate objection to said claim."[30]  The Debtor makes two arguments: (1) that this count is a substantively core proceeding, and (2) that Gentile has waived her right to arbitrate by availing herself of the bankruptcy court through filing the Proof of Claim, attending the 341 Meeting, and obtaining a 2004 Order.[31]  Both arguments lack merit.

As for the first argument, issues involving the filing and validity of a proof of claim are often denominated as "procedurally core."  See S.W. Bach, 425 B.R. at 90.  As discussed above, procedurally core claims may still be subject to mandatory arbitration.  See id.; Hagerstown, 277 B.R. at 203.  In Singer, the creditor filed a proof of claim as required "to be eligible for any payment in respect of its claim."  Singer, 2001 WL 984678, at *6 n.11.  The Singer court was unpersuaded that the filing of the proof of claim removed the issue from the purview of arbitration:

> While a creditor must generally file a proof of claim to be eligible
> to receive payment and the Bankruptcy Code imposes an automatic
> stay on creditors' collection efforts in non-bankruptcy fora, there is
> no Code requirement that all issues relating to a debtor's activities
> be adjudicated in the Bankruptcy Court.  The risk of inconsistent
> adjudications is not unique to bankruptcy and does not frame an
> inherent conflict between Bankruptcy Code and FAA policy.

---

[30] Complaint ¶ 56.

[31] Objection ¶ 29.

Id. at *6.  See also I.E. Liquidation, Inc. v. Litostroj Hydro, Inc. (In re I.E. Liquidation, Inc.),

2009 WL 1586706, 2009 Bankr. LEXIS 1448, at *25 (Bankr. N.D. Ohio 2009) ("The validity of

[creditor-defendant's] proof of claim will almost certainly turn entirely on the facts that will be

litigated in the claims and counterclaims for breach of contract that [the parties] will bring

against one another in [another forum].  Few legal issues and even fewer factual issues appear

likely to stand between the resolution of that non-core proceeding and the matter of allowing or

disallowing [creditor-defendant's] claim against the estate."), cited in S.W. Bach, 425 B.R. at 96;

Hagerstown, 277 B.R. at 203 ("Objections to proofs of claim and counterclaims asserted by the

estate, the types of core proceedings involved in Singer and Winimo, exemplify [a procedurally

core] matter.  The arbitration of a procedurally core dispute rarely conflicts with any policy of

the Bankruptcy Code unless the resolution of the dispute fundamentally and directly affects a

core bankruptcy function.").

        Nor am I persuaded by the Debtor's waiver argument.  Given the strong federal policy in

favor of arbitration, a waiver of the right to arbitrate "is not to be lightly inferred."  Brownstone,

514 F. Supp. 2d at 550 (citing Leadertex v. Morganton Dyeing & Finishing Corp., 67 F.3d 20, 25

(2d Cir. 1995); Carcich v. Rederi A/B Nordie, 389 F.2d 692, 696 (2d Cir. 1968)).  "[A]ny doubts

concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the

problem at hand is the construction of the contract language itself or an allegation of waiver,

delay, or a like defense to arbitrability."  Id. at 549 (citations omitted); Stevenson, 2006 U.S.

Dist. LEXIS 71852, at *15 (citing Moses H. Cone, 460 U.S. at 24-25).  Accord JLM Indus., 387

F.3d at 172-74; Kirschner, 2008 U.S. Dist. LEXIS 41453, at *22; Moore, 1995 U.S. Dist. LEXIS

971, at *20.  A waiver will be found only when the party against whom waiver is asserted has

engaged in substantial litigation activity resulting in prejudice to the party asserting waiver.

Brownstone, 514 F. Supp. 2d at 550.  "In determining whether [a party] has waived its right to

arbitration, we will consider such factors as (1) the time elapsed from the commencement of

litigation to the request for arbitration, (2) the amount of litigation (including any substantive

motions and discovery), and (3) proof of prejudice."  Id. (citing PPG Indus., Inc. v. Webster

Auto Parts, Inc., 128 F.3d 103, 107 (2d Cir. 1997)).

 Applying these factors, I find Gentile did not waive her right to arbitrate.  Gentile filed

her Proof of Claim because she was required to comply with a court-ordered deadline.[32]

Gentile's Proof of Claim is based upon her claims filed in the Arbitration.  Moreover, the timing

of events in this Bankruptcy Case and the Arbitration strongly undermine the Debtor's argument.

Despite the entry of the 2004 Orders, the Arbitration and any discovery ordered in connection

with the Arbitration predates this Bankruptcy Case.  In addition, there can be no waiver of the

right to arbitrate unless a party's conduct has resulted in prejudice to the other party.  See

Brownstone, 514 F. Supp. 2d at 551 (citing Leadertex, 67 F.3d at 26; Cotton v. Slone, 4 F.3d

176, 180 (2d Cir. 1993); Rush v. Oppenheimer & Co., 779 F.2d 885, 887 (2d Cir. 1985)).  The

Debtor has failed to meet his burden in this regard.  See Winimo Realty, 270 B.R. at 118; S.W.

Bach, 425 B.R. at 89.  While the parties may have undertaken discovery in this Bankruptcy Case

pursuant to the 2004 Orders, the Debtor fails to identify any information that may have been

obtained pursuant to such 2004 Orders that would have been unavailable in the Arbitration.

Indeed, the Debtor admits that the 2004 Orders largely overlap with the issues raised in the

Arbitration.[33]  Nor is the Debtor's Complaint a factor because it was filed after the Motion

seeking to resume arbitration.  In any event, expense and delay, without more, do not constitute

---

[32] See supra notes 21-22 and accompanying text.

[33] See supra note 24 and accompanying text.

prejudice sufficient to support a finding of waiver.  Brownstone, 514 F. Supp. 2d at 552 (citations omitted).

### (c)    Count 6: Turnover of Property of the Estate

The Debtor brings count 6 under section 542 of the Bankruptcy Code for turnover of estate property as that term is defined in section 541.[34]  While section 542 is tied to the underlying objectives of the Bankruptcy Code, count 6 of the Debtor's Complaint does not raise any unique bankruptcy issue and, therefore, is not an impediment to arbitration.

Nearly every issue concerning a debtor in bankruptcy relates to the debtor's estate.  As the Second Circuit observed in U.S. Lines, it cannot be that all proceedings involving property of the estate are core; such an approach would create an exception to Marathon that would swallow the rule.  U.S. Lines, 197 F.3d at 637 (quoting Orion Pictures, 4 F.3d at 1102).  Moreover, the Debtor's reliance on section 542 is facially problematic because that section provides only for the turnover of undisputed debts, and the alleged debt here is clearly disputed.  See Andrew Velez Constr., Inc. v. Consol. Edison Co. of N.Y., Inc. (In re Andrew Velez Constr., Inc.), 373 B.R. 262, 273 (Bankr. S.D.N.Y. 2007); Savage & Assoc., P.C. v. Mandl (In re Teligent, Inc.), 325 B.R. 134, 137-38 (Bankr. S.D.N.Y. 2005); Hirsch v. London S.S. Owners Mut. Life Ins. Ass'n Ltd. (In re Seatrain Lines, Inc.), 198 B.R. 45, 50 n.7 (S.D.N.Y. 1996).  Despite its bankruptcy gloss, count 6 appears to be nothing more than an attempt to recover some or all of the same disputed money sought in counts 1 through 5.

Given the underlying nature of the parties' disagreements and their disputed nature, nothing in count 6 raises a unique bankruptcy issue that counsels against proceeding with the pending arbitration.  Enron Power, 2003 U.S. Dist. LEXIS 189, at *31 (citing In re McMahon,

---

[34] Complaint ¶¶ 57-60.

222 B.R. 205, 208 (S.D.N.Y. 1998)).  See also Complete Management Inc. v. Arthur Andreson,

LLP (In re Complete Management, Inc.), 2002 U.S. Dist. LEXIS 18344, 2002 WL 31163878, at

*3 (S.D.N.Y. 2002) ("Every claim of a debtor in bankruptcy is an asset of the estate which, if

successful, will enure to the benefit of the estate.  To interpret the language of § 157(b)(2)(O) so

broadly would render the distinction between core and non-core claims meaningless.").

### (d)   Counts 7-8: Declaratory Judgment

Under counts 7 and 8 of the Complaint, the Debtor seeks declaratory relief relating to the

APA.  Collectively, the two counts claim that the Debtor was fraudulently induced into entering

the APA, that Gentile is liable under the APA, and that the APA should be declared void.[35]  As

the Debtor has not established that these claims are core bankruptcy proceedings that properly

should be decided in this forum, I conclude that they are not an impediment to proceeding with

arbitration.

Declaratory relief is proper, "only (i) where the judgment will serve a useful purpose in

clarifying and settling the legal relations in issue, or (ii) when it will terminate and afford relief

from the uncertainty, insecurity and controversy giving rise to the proceedings."  Rickel &

Associates Inc. v. Smith (In re Rickel & Assocs.), 272 B.R. 74, 98 (Bankr. S.D.N.Y. 2002)

(quoting Maryland Casualty Co. v. Rosen, 445 F.2d 1012, 1014 (2d Cir. 1971)).  A court has

broad discretion to decide whether to render a declaratory judgment.  Id. at 98-99 (citing Orion

Pictures, 4 F.3d at 1100).

The Debtor has not explained why the declaratory judgment sought by the Complaint is

inherent to federal bankruptcy law or why such relief is not more appropriately raised within the

Arbitration.  Indeed, the declaratory relief sought by the Debtor is fundamentally tied to the

---

[35] See Complaint ¶¶ 61-70.

APA.  The interpretation of the APA and the parties' conduct in connection with the APA should

be decided through arbitration as agreed upon by the parties in the APA.  The Debtor has not

shown that a bankruptcy court determination of such issues would serve a useful purpose or

resolve any uncertainty.

In Barnes, a scenario similar to the instant factual situation presented itself, and the

district court refused to allow the bankruptcy court to entertain the forum shopping of a plaintiff

who sought to avoid the plain meaning of the arbitration agreement to which it was bound:

> Counts II through IV also appear to arise out of or relate to the
> 2005 Agreement.  Plaintiff incorporated the same factual allega-
> tions in these Counts that gave rise to Count I.  Moreover, each of
> them arises as a result of Plaintiffs allegations relating to
> Defendant's termination of the 2005 Agreement and purported acts
> of bad faith in connection with that termination.  Even if the Court
> could not conclude with certainty, however, that claims such as
> those raised in Counts II through IV were intended to be arbitrated,
> the ambiguity is to be resolved in favor of arbitration.

Barnes, 2010 U.S. Dist. LEXIS 4390, at *8-9.  As in Barnes, the Arbitration already underway

between Gentile and the Debtor, if allowed to continue, is likely to dispose of most if not all of

the claims raised in the Complaint.

## IV.    Whether to Stay Any Non-Arbitrable Claims

The fourth prong of the test applies where a court determines that some, but not all, of the

relevant claims are arbitrable.  In such an instance, the court must determine whether to stay the

balance of claims.  Hagerstown, 277 B.R. at 199 (citations omitted).  Because the Debtor's

Complaint was filed only after Gentile had filed her Motion to compel Arbitration, Gentile has

not sought any relief from this Court relating to the Complaint other than to proceed with the

pending Arbitration.  But as the Arbitration will address the same issues contained in the

Complaint, I exercise my discretion to stay any proceedings relating to the Complaint and

Gentile's Proof of Claim until after the Arbitration concludes. See Cont'l Casualty Co. v. Pfizer, Inc. (In re Quigley Co.), 361 B.R. 723, 742 (Bankr. S.D.N.Y. 2007) ("Courts have the inherent power to grant a discretionary stay of a proceeding pending arbitration, where there are issues common to the arbitration and the court proceeding, and those issues may be determined by the arbitration."). See also Singer, 2001 WL 984678, at *3 ("Congress did not envision all bankruptcy related matters being adjudicated in a single bankruptcy court."); Moore, 1995 U.S. Dist. LEXIS 971, at *19 ("It is well-settled that claims are appropriately stayed when they involve common issues of fact and law with those subject to arbitration or when the arbitration is likely to dispose of issues common to claims against both arbitrating and non-arbitrating defendants.").[36]

## CONCLUSION

Given the strong federal policy favoring arbitration agreements, the Motion to compel the Arbitration is granted and the Complaint is stayed in its entirety.

IT IS SO ORDERED.

Dated: New York, New York
  **November 18, 2010**

  **/s/ Sean H. Lane**
  UNITED STATES BANKRUPTCY JUDGE

---

[36] Where all of the issues raised in a complaint are arbitrable, a court may dismiss an action rather than stay proceedings. Am. Gen. Life Ins. Co. v. Oppenheimer Life Agency & Oppenheimer & Co., 2010 WL 1924747, 2010 U.S. Dist. LEXIS 46573, at *11 (S.D.N.Y. 2010) (citations omitted). See also Barnes, 2010 U.S. Dist. LEXIS 4390, at *6 ("When all of the issues presented in a lawsuit are arbitrable, however, 'dismissal is a proper remedy.'") (citing Choice Hotels Int'l Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709-10 (4th Cir. 2001)). Because this Bankruptcy Case was filed in large measure to stay the Arbitration, the parties should consider now whether the Complaint and the Bankruptcy Case should proceed or whether the estate would be better served by dismissal.